# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**AMFIRE, LLC,**
**Employer Below, Petitioner**

**vs.)    No. 16-1187**  (BOR Appeal No. 2051363)
                    (Claim No. 2009085340)

**RUSSELL HUNT (DECEASED)**
**AND SHEENA HUNT,**
**Claimants Below, Respondent**

**FILED**

October 10, 2017
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Amfire, LLC, by Timothy Huffman, its attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Russell Hunt (deceased) and Sheena Hunt, by Stephen New and Amanda Taylor, their attorneys, filed a timely response.

The issue on appeal is dependent's benefits. On June 23, 2015, the claims administrator denied the application for dependent's benefits. The Office of Judges reversed the claims administrator in its June 8, 2016, Order. The Order was affirmed by the Board of Review on November 8, 2016. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Russell, Hunt, the decedent, sustained a head injury while working on a roof bolt machine on March 24, 2009. On December 7, 2010, he died at home in his sleep. An autopsy was performed on December 8, 2010. However, the death investigation report with post mortem examination findings was not completed until August 9, 2011.  Mr. Hunt's death certificate was amended on August 24, 2011.  On February 24, 2012, Sheena Hunt applied for dependent's benefits on behalf of her minor granddaughter. The claims administrator rejected the application on March 19, 2012.  In  *Sheena H. ex rel. Russell H. ex rel. L.H. v. AmFire, LLC*, 235 W.Va. 132, 772 S.E.2d 317 (2015), we reversed the Board of Review and found the claim for dependent's benefits was timely filed.

On remand, in a June 23, 2015, decision, the claims administrator denied the application for dependent's benefits because there was not sufficient, credible evidence linking the cause of death to the work incident. The claims administrator also stated the "original application for dependent's benefits was not timely filed indicated that the applicant did not know nor reasonably believe that the death of the decedent was work related". The Office of Judges reversed the claims administrator's decision on June 8, 2016, and found the claim compensable for dependent's benefits. The Board of Review affirmed the Office of Judges Order on November 18, 2016. This appeal followed.

Russell Hunt, the decedent, sustained a head injury while working on a roof bolt machine on March 24, 2009. He was knocked unconscious, complained of a bad headache, and had a bump the size of a golf ball on his head. The decedent was transported by ambulance to the emergency room at the Welch Community Hospital where he was diagnosed with a contusion to the head and a concussion with loss of consciousness. A CT scan of his head was normal. He was prescribed medication, and told to return to the walk-in clinic for a follow-up, if necessary. On December 7, 2010, Mr. Hunt died at home in his sleep.

Allen Mock, Deputy Chief Medical Examiner and a board certified anatomic pathologist, clinical pathologist, and forensic pathologist, performed an autopsy on December 8, 2010. He determined that Mr. Hunt died as a result of a seizure while sleeping. He believed that the seizure was caused by a remote head injury received at work. Dr. Mock noted Mr. Hunt's family reported they had witnessed seizure activity while he slept during the period following the head injury. The autopsy demonstrated left occipital lobe atrophy with associated hydrocephalus ex vacuo with no evidence of acute intracranial injury. The manner of death was best certified as an accident. Dr. Mock signed the autopsy report on August 3, 2011. James A. Kaplan, the Chief Medical Examiner, signed the autopsy report on August 12, 2011. The death certificate was amended on August 24, 2011, to list the cause of death as a seizure. It also states that the claimant was struck in the head while working as a professional coal miner.

Lone Thanning, M.D., an anatomic and forensic pathologist, prepared a medical report on July 20, 2012. He agreed with Dr. Mock that the mechanism, cause and manner of death was a blunt force injury with post-traumatic complications of seizure disorder. This caused the sudden seizure death on December 7, 2010. Dr. Thanning opined that Mr. Hunt died as a direct result of the accident and injuries sustained while at work on March 24, 2009.

On September 5, 2013, Mary Fowkes, M.D., a board certified neuropathologist, forensic pathologist, and anatomic pathologist testified via deposition. She diagnosed Mr. Hunt with hypersensitive, cerebral and cardiovascular disease, slight to moderate. She opined he died of natural causes due to a posterior cerebral circulation stroke to the occipital lobe region secondary to hypertension. This was an ischemic stroke in the occipital lobe region secondary to hypertension. This was a remote stroke, and acutely there was another event that occurred as implied by the red neurons, but she did not know what that was. Dr. Fowkes believed the other event would have been within hours prior to Mr. Hunt's death. In her opinion, the most probable cause of death was cardiac and cerebral hypertensive vascular disease. She also opined that Mr. Hunt had an arrhythmia which caused an hypoxic/ischemic event that resulted in brain swelling.

2

Dr. Mock testified via deposition on September 3, 2013, that the delay in issuing the amended death certificate was due to the need for additional investigation which included obtaining and reviewing medical records, additional toxicology testing, and histologic slide preparation and review. Dr. Mock opined that Mr. Hunt had mild hypertensive cardiovascular disease for years. In his examination of the brain, Dr. Mock noted a focal cerebral atrophy with associated mild hydrocephalus ex vacuo, in the left posterior occipital lobe. He opined Mr. Hunt had traumatic epilepsy. He saw no cerebrovascular atherosclerosis. He found no red neurons in the areas of the brain he sampled. If Mr. Hunt had suffered a stroke, as Dr. Fowkes concluded, Dr. Mock would have seen the red neurons in his sample.

Dr. Thanning also testified via deposition on September 3, 2013. She stated that Dr. Fowkes did not state with specificity in her report where in the cerebral convexities or base of the brain that the slides she reviewed were taken. In her opinion, Dr. Fowkes did not compare the autopsy record with the slide key to her own examination. Therefore, Dr. Fowkes refers to the cerebral cortex as a description of grey matter. Dr. Thanning's microscopic review showed hemosiderin pigment which is the breakdown of red blood cells as they deteriorate. This signified an old hemorrhage. Mr. Hunt had a traumatic subarachnoid hemorrhage. In her opinion, the traumatically induced seizures led to Mr. Hunt's death. There was no evidence of a cerebral vascular event.

The Office of Judges weighed the testimony and opinions rendered by Drs. Mock, Thanning, and Fowkes, noting the opinions of Drs. Mock and Thanning as to the cause of death were contrary to that of Dr. Fowkes. Dr. Fowkes opined Mr. Hunt's death was due to natural causes, a stroke secondary to hypertension. While Dr. Fowkes is the only neuropathologist that expressed an opinion as to the cause of death of the decedent, the Office of Judges found the opinions of Drs. Mock and Thanning to be more persuasive. It focused on the slides of the brain that were reviewed by both Dr. Thanning and Dr. Fowkes when it determined that Dr. Thanning's opinion was more persuasive. Dr. Fowkes did not identify where in the cerebral convexities of base of the brain that the slides she reviewed as part of her microscopic slide examination came from. Dr. Fowkes failed to note the hemosiderin pigment.

The hemosiderin pigment on the histological slides signify an old hemorrhage in Mr. Hunt's brain tissue. In Dr. Thanning's opinion, this was further evidence that Mr. Hunt had a subarachnoid hemorrhage. Dr. Thanning found no evidence of hypertensive hemorrhages that were acute, subacute, or old in appearance, which ruled out a catastrophic massive infarct due to a blood clot. The Office of Judges also noted that Dr. Mock found focal atrophy of the left occipital lobe and hydrocephalus ex vacuo, during his autopsy. It found the medical conclusion that Mr. Hunt's death was consistent with sudden death due to seizure of traumatic etiology following a remote head injury while at work to be persuasive. The Office of Judges determined that a preponderance of the evidence established that Mr. Hunt died as the result of a seizure in the setting of traumatic seizure disorder following a remote head injury at work on March 24, 2009. Therefore, it reversed the claims administrator's decision and held the claim compensable for dependent's benefits.

The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed the Office of Judges' Order on November 8, 2016. After review, we agree with the Board of Review. The Office of Judges meticulously reviewed the reports and deposition testimony of the experts. It determined Drs. Mock and Thanning to be more credible. Dr. Thanning explained the importance of hemosiderin pigment on the histological slides. Dr. Fowkes failed to note this in her report. The Board of Review's decision is based on a preponderance of the credible medical evidence.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: October 10, 2017**

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

4